IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AYANI M.,[1] | No. 1:21-cv-1264-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

This matter comes before me on Plaintiff Ayani M.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On February 26, 2019, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and on January 5, 2021, applied for Disability Insurance Benefits ("DIB") under Title II. Tr. 73. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 146-49, 155-57. Plaintiff appeared before Administrative Law Judge ("ALJ") Matthew Kawalek in January 2021. Tr. 92-115. On March 9, 2021, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 70-91. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 26, 2019. Tr. 75. At step two, the ALJ determined that Plaintiff had the following severe impairments: insomnia, an affective disorder called either adjustment disorder or reactive depression, an anxiety disorder called obsessive-compulsive disorder ("OCD") and generalized anxiety disorder, ASD, and unspecified neurodevelopmental delay. Tr. 76. At step three, the ALJ found that Plaintiff's impairments did not meet the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. Tr. 76. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) meaning the claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 6 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. He can tolerate no exposure to hazards, including unprotected heights or operating heavy machinery. Mentally, he is limited to understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time. He can sustain only ordinary routines and make no more than simple, work-related decisions. He can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.

2 – OPINION & ORDER

Tr. 78.

At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 84. At step five, the ALJ found that Plaintiff retained the capacity to perform jobs that exist in significant numbers in the national economy. Tr. 84. The ALJ therefore found Plaintiff not disabled from the alleged onset date of February 26, 2019, through March 9, 2021, the date of the ALJ's unfavorable decision. Tr. 85.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises three issues with the ALJ's decision. First, he contends that the ALJ unreasonably discounted his symptom testimony without clear and convincing reasons for doing so. Second, Plaintiff argues that the ALJ erred in disregarding Nurse Practitioner Elisabeth Sturm and Dr. Thomas Shields' medical opinions. And third, Plaintiff argues the ALJ erred by discounting his mother and grandmother's lay witness statements. I address each issue in turn.

I.   **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified that past full-time work attempts were unsuccessful due to extreme exhaustion, mental fatigue, and feeling physical ill. Tr. 102-03, 105-06, 108. Interacting with "challenging customers" caused anxiety and made it difficult for him to think clearly. Tr. 109.

4 – OPINION & ORDER

He lived on his own but stayed at his mother's house a few nights a week. Tr. 104. His mother paid his rent, assisted him with transportation, made phone calls on his behalf, and helped advocate for him. Tr. 104. He was enrolled in college, where he received disability accommodations, including extra time and quiet environments for testing and additional breaks during class. Tr. 104. His classes were about two-and-a-half hours long, and he usually needed to take a couple of ten-minute breaks per class because he had trouble focusing. Tr. 104-05. Plaintiff testified that he sometimes forgets to take his medication or to go to appointments. Tr. 105. His mother and grandmother provide a lot of reminders and assistance. Tr. 105. He has daytime fatigue despite getting a full night of sleep with medication. Tr. 106. He stated that he feels stable some days, then other days experiences mood swings, anxiety, difficulty focusing, and difficulty dealing with conflict. Tr. 107. He is socially awkward and has a hard time in large crowds. Tr. 107. He is prone to stress and anxiety, and he testified to panic and difficulty thinking clearly. Tr. 107.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 79. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 79. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence and treatment history, activities of daily living, including work and school, and that Plaintiff's conditions improved with treatment.

 *A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to

assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

Concerning Plaintiff's testimony about his anxiety, depression, difficulty adapting to change, and fatigue, the ALJ reasonably discounted these allegations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). For example, the ALJ noted that Plaintiff exhibited "normal attention and concentration, intact memory, average to above average intelligence, a happy affect," which conflicted with his testimony of fatigue, anxiety and depression, Tr. 80 (citing Tr. 864-65, 904-905). Likewise, despite testifying that he was unable to work because of fatigue, the ALJ noted that at medical appointments Plaintiff displayed as "active and alert, oriented to time, place and person, and he had normal recent and remote memory." Tr. 81 (citing Tr. 674-75). Even at an appointment when Plaintiff complained of sleep disturbance and fatigue, he was cooperative, calm, and had normal attention and concentration, with intact memory, and a happy affect. Tr. 81 (citing Tr. 890). Taken together, these countervailing symptom reports amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about anxiety, depression, and fatigue because it conflicted with the record evidence.

6 – OPINION & ORDER

### B. Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The ALJ reasonably concluded that Plaintiff's fatigue and sleep-related symptoms improved with treatment, which further undermined his hearing testimony. Although Plaintiff complained that he was unable to work due to fatigue (Tr. 80-81, 103), he elsewhere reported that his sleep improved with medication (Trazodone) and that he was not as tired and had a "good energy level." Tr. 80-81 (citing Tr. 675); *see also* Tr. Tr. 816 (reporting "sleeping well" with Trazodone), 822 (reporting that medication "is working well" and that he was "[s]leeping through the night 8-10 hrs."). Furthermore, as noted above, even when Plaintiff complained of sleep disturbance and fatigue, he remained cooperative, calm, pleasant with normal speech; he had normal attention and concentration, intact orientation, intact memory, a happy affect, intact thought processes, and unremarkable thought content. Tr. 81 (citing Tr. 890). This is another clear and convincing reason, supported by substantial evidence to discount Plaintiff's symptom testimony.

### C. Daily Activities

The ALJ also discounted Plaintiff's subjective symptom testimony about his fatigue and social anxiety because it was inconsistent with his reported daily activities. Tr. 81. Activities of

7 – OPINION & ORDER

daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)

      At the hearing, Plaintiff testified to anxiety and difficulty interacting with others (Tr. 103-109), which the ALJ reasonably concluded conflicted with his other testimony about working and attending school. Even when they do not show transferable work skills, daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. The ALJ reasonably contrasted Plaintiff's record at Southern Oregon University, where he graduated with good grades, and completed significant community service, with his testimony of disabling symptoms at the hearing. Tr. 77, 81 (citing Tr. 789, 808, 816, 822). Activities like being an "officer for the Yoga and Meditation Club" and moving into a shared apartment clashed with Plaintiff's testimony about his difficulty being around many people. Tr. 81. The ALJ also reasonably cited Plaintiff's work "20-30 hours per week at Market of Choice as a bagger" (Tr. 810) and evidence that he "work[ed] 40 hours per week in the summer and less during the school year" in 2018 (Tr. 679) as inconsistent with Plaintiff's testimony that he was unable to work full-time because of fatigue and feeling ill from work. Tr. 103. The ALJ rationally found that these activities, while limited,

8 – OPINION & ORDER

undermined Plaintiff's allegations of disability and this is a further clear and convincing reason, supported by substantial evidence, bolstering the ALJ's decision to discount his allegations.

Plaintiff counters that the ALJ erred by cherry-picking scattered moments of "essentially normal objective" medical findings from a record that otherwise shows "persistent anxiety, panic attacks, OCD behaviors, depression, social impairment, insomnia, rigidness, and loneliness, as well as some irritability, catastrophic thinking, and anger." Pl. Br., ECF No. 14 at 19-20. "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Here, however, the ALJ reviewed the entire record and came to the reasonable conclusion that Plaintiff's improvement with treatment, daily activities, and other objective medical evidence conflicted with the testimony about the severity of his symptoms. Tr. 78. Plaintiff's further arguments are an effort to have this Court re-weigh the evidence, which is not the province of this Court's review. *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (noting that the Court may not "reweigh the evidence [and] substitute [its] own judgment" for the ALJ's). Because the ALJ identified three clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and those reasons were supported by substantial evidence, the Court will not disturb the ALJ's conclusion that Plaintiff's symptoms were not as severe as alleged at the hearing.

**II.    Medical Opinion Evidence**

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including

treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

A.   NP Sturm

In January 2020, Nurse Practitioner Elisabeth Sturm reported in a written statement that she began treating Plaintiff in June 2017 and saw him two to three times per year. Tr. 842. She reported that Plaintiff was diagnosed with Asperger's syndrome, and that he has difficulty maintaining jobs and connecting with others. Tr. 842-43. NP Sturm noted that Plaintiff presented as less sociable and incapable of reading social cues on examination. Tr. 843. He was prescribed Trazodone for insomnia. Tr. 844. NP Sturm opined that Plaintiff would be off-task 20% of a

10 – OPINION & ORDER

typical workday due to difficulty concentrating and distractibility. Tr. 845. She further opined that he would be absent two workdays per month. Tr. 845.

NP Sturm provided an updated statement in October 2020, in which she noted that Plaintiff's symptoms include difficulty with maintaining concentration, completing tasks, engaging in relationships with other people, communicating in basic tasks, and communicating basic needs. Tr. 880. NP Sturm opined that Plaintiff would be off-task 25% or more of a typical workday due to trouble with concentrating, reading social cues, and staying engaged. Tr. 882. She further opined that Plaintiff would be absent more than four workday per month. Tr. 882.

The ALJ relied on two bases to find NP Sturm's opinion unpersuasive. The ALJ concluded that NP Sturm's opinion lacked supportability and was inconsistent with treatment notes and the longitudinal record. Tr. 83. Both are supported by substantial evidence.

First, the ALJ reasonably found NP Sturm's medical opinions unpersuasive because they lacked support in the record. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020). The ALJ found NP Sturm's opinions about time off task and missed work were unsupported by both the treatment notes and the record at large. Tr. 83; *see* Tr. 676-79, 822-23, 856 (noting a largely unremarkable mental status exam), 873-76, 890-95. In fact, without any comment as to missed time or time off task, NP Sturm's treatment notes observed that Plaintiff worked and had been doing well in school. Tr. 676 ("doing well in school"), 679 ("works 40 hours per week in the summer and less during the school year"), 823,

857 (noting that Plaintiff was working as a courtesy clerk and was doing well in school despite stress during midterms and finals; would likely go on to get a postgraduate degree), 874 (noting that Plaintiff was working at Market of Choice and wanted to work more in the summer). The ALJ reasonably concluded that NP Sturm's notes about Plaintiff's work history and education were incompatible with her opinion that Plaintiff would miss work or be off-task. Taking these conflicting medical reports into consideration, the ALJ therefore sufficiently considered the supportability of NP Sturm's opinions when finding them unpersuasive.

The ALJ also reasonably considered that NP Sturm's opinions were inconsistent with other medical evidence when finding them unpersuasive. An opinion's persuasiveness is directly related to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. The ALJ reasonably found NP Sturm's opinion was inconsistent with the record and her own treatment notes. Tr. 83. She opined Plaintiff had trouble concentrating and completing tasks, but treatment notes, including her own, repeatedly showed that he was able to maintain attention and concentration. Tr. 82, 677 (NP Sturm noting Plaintiff had no difficulty concentrating, remembering, or making decisions), 822 (NP Sturm noting no difficulty concentrating, remembering, or making decisions), 856 (NP Sturm noting "normal attention and concentrating ability"), 875 (noting normal concentration), 884 (NP Sturm noting no difficulty concentrating, remembering, or making decisions), 890 (NP Sturm noting "normal attention and concentrating ability"). These internally conflicting notes were another sufficient reason for the ALJ to find NP Sturm's opinions unpersuasive, this time because they lacked consistency in the record.

Plaintiff argues that the ALJ failed to explain how these records constituted substantial evidence, and he claims that the ALJ selectively reviewed the record. Pl. Br., ECF No. 14 at 12.

12 – OPINION & ORDER

As before, Plaintiff argues about the weight of the medical evidence, which he believes points in favor of finding NP Sturm's medical opinions persuasive. But again, it is not this Court's job to weigh the evidence, only to assess whether the ALJ's rationale is "clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. The ALJ satisfied that standard, and sufficiently considered the supportability and consistency of NP Sturm's opinion when deciding it was unpersuasive. The Court will therefore affirm the ALJ's findings.

    B.    *Dr. Shields*

In September 2019, Dr. Thomas Shields reviewed available medical records and administered a clinical interview, mental status examination, and Index of Independence in Activities of Daily Living. Tr. 807. Plaintiff reported that he had a "hard time understanding social stuff." Tr. 808. He had been enrolled in special education and graduated with a mainstream high school diploma. Tr. 808. He was easily fatigued. Tr. 808. He had been without counseling services for a couple of months because his insurance would not cover the sessions. Tr. 808. He took Trazodone for insomnia, which helped "significantly." Tr. 808. He endorsed a history of deficits in social-emotional reciprocity. Tr. 808. He was socially awkward and had difficulty making and keeping friends. Tr. 808. He tended to feel "overwhelmed and overstimulated" in crowds. Tr. 809. He had difficulty understanding others' emotions and had problems with the use of nonverbal language. Tr. 809. He was very routine-oriented and struggled to adapt to change and was hypersensitive to loud sounds. Tr. 809.

Dr. Shields noted that Plaintiff's speech was normal in volume and rate but marked with a monotone quality. Tr. 810. He presented with a restricted affect. Tr. 810. He avoided eye contact. Tr. 810. He appeared "fairly aloof and a bit awkward." Tr. 810. He made minimal effort to facilitate rapport with Dr. Shields. Tr. 810. He repeated seven digits forward and four digits

backward. Tr. 810. His intellect was estimated in the average range, and his abstracting ability appeared intact. Tr. 810. His thought process was sequential and goal directed. Tr. 810. Dr. Shields diagnosed ASD, unspecified neurodevelopmental delay (visual-spatial, fine motor, gross motor, and motor planning delays, diagnosed by history), and adjustment disorder with depression and anxiety. Tr. 811. He concluded that Plaintiff was capable of understanding, remembering, and carrying out simple and detailed instructions. Tr. 811. He further opined that Plaintiff would struggle with understanding higher-order abstract language because he was prone to interpret conversations literally. Tr. 811. He wrote, "[s]ocially, [Plaintiff is] aloof, awkward, and has problems understanding social cues. He does not adapt well to unexpected changes in his routine. His fatigue, low stress tolerance, and visual-spatial and motor skill problems would impact his ability to sustain persistence and pace." Tr. 811. The ALJ found Dr. Shields's opinion "not persuasive." Tr. 82.

The ALJ reasonably rejected Dr. Shields' opinion as lacking support in the record and inconsistent with Plaintiff's mental status examinations. Tr. 82. As noted above, an opinion's persuasiveness is a function of its support in the relevant objective medical evidence, and consistency with other opinions in the record. *See* 20 C.F.R. §§ 404.1502(c), (f), (g). *Ford*, 950 F.3d at 1155. For example, the ALJ noted that on March 19, 2019, Plaintiff maintained an appropriate appearance; was engaged, responsive, and sensitive; had a normal mood; an anxious but normal affect; appropriate thought content and processes; normal intellectual functioning; good insight; fair judgment; and the ability to maintain concentration. Tr. 82, 770. Similarly, the ALJ cited an August 25, 2020, appointment where Plaintiff showed normal gait, muscle tone, and psychomotor ability. Tr. 82, 925. He was cooperative and pleasant despite an anxious affect. Tr. 82, 925. His eye contact was good, his speech was normal, and he showed a linear and

logical thought process. Tr. 82, 925. His ability to concentrate and make associations was intact. Tr. 82, 925. Again, on November 17, 2020, Plaintiff was cooperative and maintained an appropriate affect despite a depressed mood. Tr. 82, 905. He had intact thought content, good attention, intact memory, and a normal estimated intelligence. Tr. 82, 905. These records stood in contrast to Dr. Shields' opinions that Plaintiff's fatigue, low stress tolerance, and motor skill problems would render him unable to work. The ALJ therefore adequately supported the conclusion that Dr. Shields' opinions lacked supportability and consistency with substantial evidence, and the Court will uphold the ALJ's finding.

### III.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses*. Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for

15 – OPINION & ORDER

rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

In May 2019, Plaintiff's grandmother completed a written third-party Function Report, in which she reported that Plaintiff experiences extreme anxiety when under pressure. Tr. 301. He struggles with time management and reading social cues. Tr. 301. He has poor fine motor skills and very poor handwriting. Tr. 301. He has low energy, low muscle tone, slow follow-through, and poor executive function. Tr. 301. He requires sleeping pills to fall asleep. Tr. 302. He is able to clean and do laundry but requires reminders. Tr. 303. He is not fully independent from his family home. Tr. 303. He does not drive due to high anxiety and distractibility. Tr. 304. He functions at a younger level than his biological age because of developmental delays. Tr. 305. He has a difficulty making friends. Tr. 305. He has problems getting along with other people because he is high strung and emotional. Tr. 305. He has trouble hearing and processing things in normal conversations. Tr. 306. He does not handle changes in routine well and is easily stressed. Tr. 307. He demonstrates OCD behaviors. Tr. 307. Plaintiff's mother's October, 2020 written testimony mirrored her earlier report.

In February 2020, Plaintiff's mother also completed a written third-party Function Report, in which she reported that Plaintiff experiences chronic insomnia, which causes low energy, weakness, and brain fog. Tr. 328-29. He has anxiety and OCD that derails his ability to focus and stay on-task. Tr. 328. He has "very rigid" routines. Tr. 328. He needs reminders to take care of personal needs. Tr. 330. He is able to take out the garbage and wash dishes, but it takes

him longer than necessary because of "excessive vigilance and OCD." Tr. 330-31. He does not drive due to poor peripheral vision and inconsistent reflex response. Tr. 331. He needs to be reminded to look both ways when crossing the street. Tr. 331. His mother pays his bills because he has poor time management skills. Tr. 332. He is forgetful. Tr. 333. He has problems getting along with other people because he is very rigid in his views. Tr. 333. He has poor muscle tone and is physically uncoordinated. Tr. 334. He is able to pay attention for ten minutes at a time on subjects in which he has an interest. Tr. 334. He has difficulty following spoken instructions. Tr. 334. He handles stress and changes in routine very poorly. Tr. 335. He has extreme anxiety about natural disasters, academic demands, and not being able to fall asleep. Tr. 335. He is awkward around peers. Tr. 336.

The ALJ erred by failing to provide specific, germane reasons to discount the lay witness testimony, but because this lay witness evidence mirrors Plaintiff's own testimony, this error was harmless. An ALJ's failure to provide germane reasons for rejecting lay witness evidence is harmless where an ALJ properly rejects a claimant's testimony and the lay witness evidence describes the same limitations. *Molina*, 674 F.3d at 1122. Here, the ALJ's clear and convincing reasons for discounting Plaintiff's self-reports, discussed above, apply equally well to the similar statements from Plaintiff's mother and grandmother. *Compare* Tr. 102-109 (Plaintiff's testimony) *with* Tr. 301-317, 328-336 (Plaintiff's grandmother's and mother's third party function reports). Any error in analyzing these statements was therefore harmless.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED:10/26/2023.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

18 – OPINION & ORDER